# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vernon Harris,                         :
                  Petitioner    :
                              :
                v.                   :    No. 831 C.D. 2019
                              :    Submitted:  November 15, 2019
Pennsylvania Board of Probation        :
and Parole,                            :
                 Respondent    :

**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** Judge
                      **HONORABLE PATRICIA A. McCULLOUGH,** Judge
                      **HONORABLE ELLEN CEISLER,** Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                **FILED: December 17, 2019**

Vernon Harris petitions for review of the June 11, 2019 Order of the Pennsylvania Board of Probation and Parole (Board) that denied Harris's petition for administrative review, which challenged the recalculation of Harris's parole violation maximum date based upon his recommitment to serve 60 months of backtime as a Convicted Parole Violator (CPV). On appeal, Harris argues the Board: exceeded its authority by recalculating his parole maximum date to exceed his judicially imposed sentence and erred by not properly calculating the amount of credit to which Harris was entitled. Discerning no constitutional violation, error of law, or abuse of discretion, we affirm.

## I.    Background

On April 26, 2013, the Board paroled Harris from 3 sentences, 2 sentences of 12 years, 6 months to 30 years and 1 sentence of 10 years to 20 years related to his

pleading guilty to, among other things, robbery and burglary in 1990 and 2005. Harris was released to a community corrections center on August 19, 2013. At the time of his release, Harris's maximum date for the first two sentences was November 24, 2019, and the third sentence was July 13, 2023. On January 20, 2015, the Philadelphia Police Department arrested Harris. Harris was charged with, among other crimes, burglary, robbery, criminal conspiracy, and possession of a firearm in violation of the Pennsylvania Uniform Firearms Act of 1995[1] (UFA) in relation to the robbery/burglary of two residences and the recovery of a firearm found next to Harris at the time of his arrest. The Board issued a Warrant to Commit and Detain Harris on January 21, 2015. By decision recorded March 18, 2015, the Board detained Harris pending the disposition of his criminal charges.

On June 25, 2015, Harris's bail on the new charges was reduced from 10 percent of $300,000 to Release on Recognizance (ROR), allowing Harris to make bail on the new charges. (Criminal Docket # CP-51-CR-0002066-2015, Certified Record (C.R.) at 34.) Accordingly, at that time, Harris remained confined on the Board's detainer. Harris was returned, in parole violator pending status, to the State Correctional Institution (SCI) at Graterford on July 1, 2015. Harris pled guilty on October 31, 2017, to robbery-threat of immediate serious injury and conspiracy – robbery-threat of immediate serious injury, both first-degree felonies, in violation of Sections 3701(a)(1)(ii) and 903 of the Crimes Code, 18 Pa. C.S. §§ 3701(a)(1)(ii) and 903, and received a sentence of 9 years to 20 years in a SCI for each, with Harris to "receive credit for time served from 1/20/2015 until today." (Order (Negotiated Guilty Plea), C.R. at 54.) He also pled guilty to burglary-overnight accommodation, person present, a first-degree felony, in violation of Section 3502(a)(1) of the Crimes

---

[1] 18 Pa. C.S. §§ 6101-6187.

2

Code, 18 Pa. C.S. § 3502(a)(1), and received a sentence of confinement of 9 years to 20 years. All three sentences were to run concurrently. Last, Harris pled guilty to possession of a firearm in violation of Section 6105(a)(1) of the UFA, 18 Pa. C.S. § 6105(a)(1), but no further penalty was imposed. The remaining charges were either changed or *nolle prossed*.

On December 4, 2017, Harris signed a Notice of Charges and Hearing based on his new criminal convictions. The same day, Harris acknowledged his rights regarding a revocation hearing, waived his rights to a revocation hearing and counsel, and admitted the new criminal convictions. Based on these new convictions, the Board recommitted Harris as a CPV to serve 60 months of backtime via decision recorded on January 8, 2018. In denying Harris credit for his time at liberty on parole, also known as street time, the Board pointed to the Hearing Examiner's notes, which indicated that Harris's "violent offenses excluded [him] from street time credit consideration." (Hearing Report, C.R. at 75, 80.)

The Board recalculated Harris's new maximum date as follows.[2] Relevant here, Harris's original maximum date was July 13, 2023, when Harris was released on parole on August 19, 2013. (Order to Recommit, January 19, 2018, C.R. at 81.) This left 3615 days remaining on Harris's original sentence. The Board gave Harris a credit of 859 days for the period between June 25, 2015, and October 31, 2017, during which he was confined solely on the Board's detainer. (*Id.*) Subtracting 859 from 3615 results in 2756 days remaining on Harris's original sentence, which when added to January 8, 2018, the date of Harris's recommitment, results in a new parole

---

[2] The Board also recommitted Harris on the sentences with the maximum date of November 24, 2019, and recalculated that maximum date to December 7, 2021, using the same process as described *infra*. (Order to Recommit, C.R. at 82.) Upon the expiration of this maximum date, Harris's other maximum date remains in effect.

3

violation maximum date of July 26, 2025. (*Id.*) By Notice of Board Decision mailed on February 2, 2018, the Board advised Harris of his recommitment as a CPV to serve 60 months of backtime and the recalculation of his maximum date to July 26, 2025. (Notice of Board Decision, C.R. at 85-86.)

Harris filed an administrative remedies form in response to the February 2, 2018 Decision. Therein, he argued the Board violated the United States and Pennsylvania Constitutions by altering his judicially imposed sentence when it recalculated his maximum sentence beyond the original maximum date. (Administrative Remedies Form, C.R. at 87-88.) Harris also appeared to challenge the Board's calculation of that maximum date. (*Id.* at 87.) The Board responded, by Order mailed June 11, 2019, explaining why its recalculation of Harris's parole violation maximum date to reflect the time remaining on his original sentence was correct. (Order, June 11, 2019, C.R. at 91.) The Board stated that it did not award credit for Harris's street time, noting his recommitment as a CPV, pursuant to Section 6138(a)(2) of the Prisons and Parole Code (Code), 61 Pa. C.S. § 6138(a)(2). Accordingly, the Board affirmed the February 2, 2018 Decision. Harris now petitions this Court for review.[3]

## II. Discussion

*A. Did the Board Improperly Extend Harris's Judicially Imposed Sentence?*

Harris first argues the Board violated the United States and Pennsylvania Constitutions by improperly extending his judicially imposed maximum date of July 13, 2023, when it recalculated his maximum date to July 26, 2025. He observes that

---

[3] Our review in parole revocation cases "is limited to a determination of whether necessary findings are supported by substantial evidence, [whether] an error of law was committed, or whether constitutional rights of the parolee were violated." *Johnson v. Pa. Bd. of Prob. & Parole*, 706 A.2d 903, 904 (Pa. Cmwlth. 1998).

4

the Board lacks jurisdiction to increase or decrease a maximum term fixed by a court pursuant to *McCauley v. Pennsylvania Board of Probation and Parole*, 510 A.2d 877, 879 n.8 (Pa. Cmwlth. 1986), which is what the Board did when it imposed backtime that exceeded the remaining balance of Harris's unexpired term and recalculated his previously established maximum date. Finally, Harris contends that he had a liberty interest in the judicially established maximum date of July 13, 2023, which could not be altered without giving him due process in a venue of competent jurisdiction, and he did not receive such process. Therefore, Harris contends, the Board's Order must be reversed.

The Board argues Harris's arguments that its recalculation of his maximum date based on the time Harris spent at liberty on parole is an extension of his judicially imposed sentence are without merit. These arguments, the Board contends, have been long rejected, including by the Supreme Court, which explained that "[t]he fallacy of [this] position is the attempt to equate time served on parole with time served in an institution," the "[m]ere lapse of time without imprisonment . . . does not constitute service of sentence," and to equate the two "is to ignore reality." (Board's Brief (Br.) at 10 (quoting *Young v. Bd. of Prob. & Parole*, 409 A.2d 843, 846 (Pa. 1979) (second and third alterations added) (quotations omitted)).) The denial of credit for street time, and the recalculation of a parolee's original maximum date to reflect that time, the Board argues, is a reasonable consequence for a parolee's violation of parole and is not unconstitutional per *Young*, 409 A.2d at 847. Further, the Board asserts, courts have recognized that the alteration of the expiration date of a sentence is not an alteration of "the total time to be served by a convict under a court-imposed sentence." *Knisley v. Pa. Bd. of Prob. & Parole*, 362 A.2d 1146, 1148 (Pa. Cmwlth. 1976). For these reasons, the Board argues it was

5

within its authority to recalculate Harris's parole violation maximum sentence to reflect the remaining time Harris had to serve on his original sentence due to the revocation of his parole.

We agree with the Board that no usurpation of the judiciary's authority occurred here. The Board may not alter the **length** of a judicially imposed sentence; however, it is authorized by Section 6138(a)(2) of the Code to reenter parolees into SCIs to serve **the remainder of the term** they would have been required to serve **had they not been paroled**. 61 Pa. C.S. § 6138(a)(2).[4] When parolees are "recommitted due to criminal conviction, [their] maximum sentence date[s] may be extended to account for all street[]time, regardless of good or delinquent standing." *Richards v. Pa. Bd. of Prob. & Parole*, 20 A.3d 596, 599 (Pa. Cmwlth. 2011). The Board does not "usurp[] the judicial function of sentencing" when it makes parolees "serve the unexpired balance of [their] original maximum sentence." *Gaito v. Pa. Bd. of Prob. & Parole*, 412 A.2d 568, 570 (Pa. 1980). In such circumstances, the Board is not altering the maximum **length** of a parolee's sentence, only the maximum **date** of the sentence. Accordingly, the Board did not exceed its authority or violate the United States and Pennsylvania Constitutions when it recalculated Harris's maximum date.

### B. Did the Board Err in its Credit Calculations?

Harris next asserts the Board erred in its credit calculations. According to Harris, he should have received credit against his original sentence for the **entire** time he spent in presentence confinement because that time must be credited against

---

[4] Section 6138(a)(2) of the Code provides that if a CPV is recommitted, "the parolee shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and, except as provided under paragraph (2.1), shall be given no credit for the time at liberty on parole." 61 Pa. C.S. § 6138(a)(2).

either his new sentence or his original sentence pursuant to *Martin v. Pennsylvania Board of Probation and Parole*, 840 A.2d 299 (Pa. 2003). Harris contends the Board's Decision "withdrew credit for the time Harris spent in good standing on partial confinement, and erroneously determined that the time spent in good standing was time spent at liberty on parole." (Harris's Br. at 18-19.) In this regard, Harris contends the Board failed to provide him credit for the time he spent incarcerated from January 20, 2015, through the mailing date of the Board's February 2, 2018 Decision. This results in Harris not receiving credit for a period of 3 years and 13 days, despite his being "held only on the parole detainer" for that period. (*Id.* at 20.) Further, Harris points out that the Board has the discretion to allow a parolee credit for street time under Section 6138(a)(2.1) of the Code, 61 Pa. C.S. § 6138(a)(2.1), which would reduce the amount of backtime the parolee would owe. Harris contends that, to be upheld, the Board had to provide a reason for its decision to deny him credit for his street time in good standing per *Pittman v. Pennsylvania Board of Probation and Parole*, 159 A.3d 466, 474 (Pa. 2017), and it did not.

The Board responds that Harris's arguments related to why the Board's credit determinations are in error are, also, without merit. First, the Board argues that the five-month period between January 20, 2015, and June 24, 2015, was not credited against the original sentence under *Gaito* because Harris was being held on both the Board's detainer and the new criminal charges due to Harris's failure to post bail, thereby requiring this period to be credited toward Harris's new sentence. 412 A.2d at 571. Second, the Board argues it properly gave Harris credit from June 25, 2015, the date his bail was set at "ROR," to October 31, 2017, the date he was sentenced on the new charges, because Harris was held solely on the Board's detainer during that time period. The Board does not address Harris's argument that he should get

7

credit against his original sentence for the period between October 31, 2017, and February 2, 2018, the mailing date of the Board's Decision recommitting Harris as a CPV. Third, the Board argues there was no need to provide a *Pittman* reason in this matter because, while such explanation is normally required, some of the crimes to which Harris pled guilty, were violent crimes that, by statute, automatically require the forfeiture of Harris's street time.

We first address Harris's contention he was entitled to credit for his presentence incarceration beginning on January 20, 2015. In *Gaito*, the Supreme Court held that if a parolee is detained **on both a Board detainer and the new charges**, **the time spent in custody is to be credited to the sentence imposed for the new charges**. 412 A.2d at 571. Here, Harris was in custody from January 20, 2015, until June 24, 2015, on both the new charges (having been unable to meet bail) and on the Board's detainer, which was issued on January 21, 2015. Pursuant to *Gaito*, therefore, this time period was to be credited to Harris's new sentence. If a parolee meets the bail requirements for the new charges and is, therefore, detained solely on the Board's detainer, the time spent in custody is to be credited to the original sentence. *Id.* As of June 25, 2015, Harris was confined solely on the Board's detainer until October 31, 2017, the date Harris was sentenced on the new charges, because Harris's bail was modified to "ROR" on the earlier date. The Board's Order to Recommit, as well as the Order, reflect that Harris received 859 days' credit against his original sentence for this time he spent confined solely on the Board's detainer.

Next, we address the period between October 31, 2017, and February 2, 2018, a period which Harris argues also should be applied against his original sentence. Harris could not begin serving his backtime on the original sentence until January 8,

2018, the date his parole was revoked. *See Wilson v. Pa. Bd. of Prob. & Parole*, 124 A.3d 767, 769-70 (Pa. Cmwlth. 2015); *Campbell v. Pa. Bd. of Prob. & Parole*, 409 A.2d 980, 981-82 (Pa. Cmwlth. 1980). Thus, January 8, 2018, was the first day Harris could begin serving and get further credit toward his original sentence. Harris contends he was "held only on the parole detainer" for that period of time. (Harris's Br. at 20.) This is not accurate because, as of October 31, 2017, Harris also had three concurrent sentences of 9 to 20 years on the new charges to be served in an SCI, which were to "commence on 10/31/2017." (Order (Negotiated Guilty Plea), C.R. at 54; Court Commitments, C.R. at 58-63.) Accordingly, to the extent Harris's original sentence was not credited for that period, it is available to be credited toward his new sentences. Therefore, we discern no error in the Board's credit calculations in this regard.

Finally, Harris's reliance on *Pittman* and its requirement that the Board give a reason for denying credit for street time is misplaced. The Supreme Court, in *Pittman*, recognized that Section 6138(a)(2.1) "clearly and unambiguously grants the Board discretion to award credit to a CPV recommitted to serve the remainder of his sentence, **except when the CPV is recommitted for the reasons stated in [Section] 6138(a)(2.1)(i and ii)**." *Pittman*, 159 A.3d at 473 (emphasis added). Section 6138(a)(2.1)(i) provides, in relevant part, that "[t]he board may, in its discretion, award credit to a parolee recommitted [as a CPV] for the time spent at liberty on parole, **unless . . . (i) [t]he crime committed . . . is a crime of violence as defined in 42 Pa. C.S. § 9714(g)**." 61 Pa. C.S. § 6138(a)(2.1)(i). Both robbery and burglary, two of the crimes to which Harris pled guilty, are listed as crimes of violence by Section 9714(g) of the Sentencing Code, 42 Pa. C.S. § 9714(g), ("[T]he term 'crime of violence' means . . . burglary as defined in 18 Pa.C.S. § 3502(a)(1)

9

(relating to burglary), [and] robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii), or (iii) (relating to robbery . . . .")).  Thus, the Board did not have any discretion to award Harris any credit for his street time under Section 6138(a)(2.1)(i).  As there was no discretion for the Board to exercise, we discern no *Pittman* violation here. However, we observe that the record reveals that the Board, in denying credit, did point to the Hearing Examiner's notes, which reflected that Harris's crimes were violent ones that were "excluded from street time credit consideration."  (Hearing Report, C.R. at 75, 80.)

### C. Did the Board Deny Harris Due Process by the Delay in its Response?

Finally, Harris contends the Board denied him due process by not responding to his administrative remedies form for more than one year.  This failure to provide a prompt response, Harris argues, deprived him access to certain "procedural safeguards for an unreasonable period of time."  (Harris's Br. at 21.)  The Board responds that, per *Smoak v. Talaber*, 193 A.3d 1160, 1166 (Pa. Cmwlth. 2018), Harris should have filed a mandamus action with the Court asking for the Court to order the Board to issue a response.  Under *Smoak*, the Board argues, "a petitioner [may] not seek reversal of an otherwise correct decision after it ha[s] been issued." (Board Br. at 11.)  Because it has already answered Harris's administrative remedies form, and Harris has not established any prejudice from the delay, the Board maintains his argument is moot.

Having concluded that the Board did not err or abuse its discretion in its Decision or Order and because Harris does not indicate he suffered prejudice from the delay, there is no need to address this argument further.

10

## III. Conclusion

For the foregoing reasons, we discern no constitutional violation, legal error, or abuse of discretion in the Board's recalculation of Harris's parole violation maximum date. Therefore, we affirm.

 

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vernon Harris,                    :

                 Petitioner      :

                    :

         v.            :     No. 831 C.D. 2019

                    :

Pennsylvania Board of Probation  :

and Parole,              :

           Respondent    :

# **O R D E R**

NOW, December 17, 2019, the Order of the Pennsylvania Board of Probation and Parole, entered in the above-captioned matter, is **AFFIRMED**.

 

                              _____

                              **RENÉE COHN JUBELIRER,** Judge